**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HENRY HORIA, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | Case No. 17-cv-08355 |
| v. | ) | |
| | ) | Hon. Andrea R. Wood |
| NATIONWIDE CREDIT AND | ) | |
| COLLECTION, INC., | ) | Magistrate Judge Daniel G. Martin |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

Now comes Plaintiff, Henry Horia, by and through his attorneys, and for his Response to Defendant's Motion to Dismiss, states as follows:

**INTRODUCTION**

Defendant Nationwide Credit and Collection, Inc. ("Nationwide") seeks to dismiss this action with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming that it is an attempt at claim-splitting, that judicial economy considerations support dismissal, and that the Illinois Collection Agency Act ("ICAA") does not provide Plaintiff with a private right of action. (Defendant's Memorandum in Support of Defendant's Motion to Dismiss, Dkt. #14, p. 3-14).

As will be shown below, Defendant, by receiving notification that Plaintiff disputed his alleged debt and thereafter failing to report the debt as disputed when it later communicated other information to the credit bureaus regarding Plaintiff's debt, violated § 1692e of the FDCPA. This debt and its dispute is separate and unrelated to a previous lawsuit that Plaintiff filed against this Defendant alleging similar claims based on entirely different debt. Plaintiff has not, as Defendant suggests, engaged in impermissible claim-splitting. To the contrary, Plaintiff has made facially

1

plausible claims necessary to withstand the Motion to Dismiss. Plaintiff therefore respectfully requests that Defendant Nationwide's Motion to Dismiss be denied.

## STANDARD

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the Case. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir. 2000); *Capitol Leasing Co. v. FDIC,* 999 F.2d 188, 191 (7th Cir. 1993). Documents which are referred to in a complaint and are central to a claim, as well as any matters of public record, may be considered on a motion to dismiss. *See Albany Bank & Trust Co. v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir. 2002); *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994). To survive a motion to dismiss, a complaint must contain sufficient facts to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Dismissal is warranted only if the allegations are not "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). The complaint must: "(1) describe[] the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggest[] that the plaintiff has a right to relief above a speculative level." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F. 3d 599, 601–02 (7th Cir. 2016) (citing *Bell Atlantic Corp.*, 550 U.S. at 555; 127 S. Ct. 1955).

The FDCPA "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790,

805 (7th Cir. 2009). A determination of whether a statement is false, deceptive or misleading, like a determination as to whether a statement is confusing under the FDCPA, is a fact-bound determination of how an unsophisticated consumer would perceive the statement. *McMillan v. Collection Professionals Inc.,* 455 F.3d 754, 759 (7th Cir. 2006). In determining whether a statement is confusing or misleading, a district court must "tread carefully" because "district judges are not good proxies for the `unsophisticated consumer' whose interest the statute protects." *Marquez v. Weinstein, Pinson, Riley, P.S. et al*, No. 15-3273, – F.3d –, 2016 WL 4651403 (7th Cir. Sept. 7, 2016) (citing *McMillan v. Collection Professionals Inc.,* 455 F.3d 754, 759 (7th Cir. 2006).

**ARGUMENT**

I. **Plaintiff Has Not Engaged in Claim-Splitting.**

Claim-splitting is typically analyzed as an aspect of *res judicata*. *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017). The doctrine of *res judicata* operates as a bar to the litigation of matters that could have been raised in a prior proceeding. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988). The doctrine "prevents the splitting of a single cause of action and the use of several theories of recovery as the basis for separate suits." *Id.* A plaintiff is thus required to allege all claims for relief arising out of a single core of operative facts in one proceeding. *Id.* This test has been described by the Seventh Circuit as "[o]nce a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986). Therefore, whether claim-splitting has occurred is usually a fact-based determination. *Id.*

Defendant relies heavily on *Chihota v. Fulton, Friedman & Gullace, LLP*, 2012 WL 6086860 (D. Ma. Dec. 5, 2012) to support its repeated assertion that Plaintiff has filed "a second lawsuit against the same defendant in the same district for the same claim arising out of the same

3

set of circumstances," (Dkt. #14, p. 3). In *Chihota*, plaintiff alleged violations of the FDCPA and defendant moved to dismiss based on untimely service of process. *Id.* at. *1. After defendant moved to dismiss but before the motion was ruled on, plaintiff brought another action against the same defendant. The court stated the second complaint was "substantively identical" to the complaint in the first suit except that plaintiff added a new defendant and another FDCPA claim. *Id.* at *2. Defendant again moved to dismiss on the basis that the second action was essentially identical to the first except for the addition of the new defendant. *Id.*

The court held that the second complaint was duplicative and therefore barred. The court stated the parties, forum, and underlying conduct that gave rise to the first action and the second action were "practically identical," only differing as to the added FDCPA claim and additional defendant. *Id.* at *3. It further explained that although the new claim was brought under a different section of the FDCPA, the claims "address[ed] the same pattern of conduct by the same party… in the same three-month period" as the claims in the first action. *Id.* Importantly, the court also found that plaintiff primarily filed the second, substantially similar complaint *to avoid the statute of limitations* on FDCPA claims. *Id.* (emphasis added). "[Counsel's] decision to file a new complaint is precisely what the doctrine against claim splitting is intended to thwart." *Id.*

### A. This case arises from a different account and transaction than those in *Horia I.*

Here, by contrast, Plaintiff's Complaint is different and completely separate from Plaintiff's complaint in *Horia v. Nationwide Credit & Collection, Inc.*, Case. No. 17-cv-06103 (N.D. Ill.) ("*Horia I*"). Plaintiff's claim in the instant case is based on entirely different set of actions from the claim *Horia I*. The actions that gave rise to Plaintiff's claims in *Horia I* constitute a separate and distinct transaction from the actions that gave rise to Plantiff's claim in the instant case. The *Horia I* claim resulted from a debt Plaintiff allegedly incurred for goods and services

used for personal purposes at Loyola University Health System. The account number began with 184**** and the disputed amount was $121.00 (*See Horia I*, Dkt. #1-1, Exhibit D to Plaintiff's Complaint). The instant complaint concerns a debt Plaintiff allegedly incurred for goods and services used for personal purposes at Gottlieb Memorial Hospital. The account number begins with 159**** and the disputed amount is $81.00. (*See* Dkt. #1-1, Exhibit D to Plaintiff's Complaint).

The disputed transactions occurred on different dates, at different locations, and would be interpreted as two different and separate accounts by the unsophisticated consumer. The actions that form the basis of each claim in these two cases are separate and distinct, and therefore did not arise from the same transaction(s) or same "core of operative facts," such that Plaintiff may properly bring the instant action as a separate proceeding. Plaintiff is mindful of the fact that the claim-splitting rule exists "to allow district courts to manage their docket and dispense with duplicative litigation." *Katz v. Gerardi*, 655 F.3d 1212, 1218-19 (10th Cir. 2011). However, this case arises from a separate transaction, from different accounts, and on different dates, as explained above. Defendant's Motion to Dismiss should therefore be denied.

### B. *Chihota* and the Other Cases Listed by Defendant are Not on Point.

Defendant's reliance on *Chihota* is misplaced. In *Chihota* the plaintiff, in order to comply with the statute of limitations, filed a second complaint after the defendant filed a motion to dismiss due to untimely service of process in her first suit. Chihota also filed the second complaint based on actions and conduct from the same underlying transaction. *Chihota v. Fulton, Friedman & Gullace, LLP*, No. CIV. WDQ-12-0975, 2012 WL 6086860, at *3 (D. Md. Dec. 5, 2012).

Unlike *Chihota I* and *Chihota II*, Plaintiff's instant claim does not arise from the same account, nor the same transaction as the previously settled claim. The alleged underlying debts

are not identical. In Marquez, the court opined that "whether a statement is confusing under the FDCPA, is a fact-bound determination of how an unsophisticated consumer would perceive the statement." *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016). Likewise, the actions concerning unrelated accounts with different original creditors should be interpreted though the viewpoint of the unsophisticated consumer. In the instant case, as previously stated, Plaintiff allegedly had one account with Loyola University Health System and a separate account with a different account number with Gottlieb Memorial Hospital. These are separate institutions, each of which individually charged Plaintiff for services rendered at each location. Plaintiff, and *any* consumer, would interpret these separate transactions for goods and services from two different service providers at two different locations to be two wholly separate and unrelated accounts and transactions.

      Defendant attempts to consolidate its handling of the two accounts when it is convenient for Defendant. Defendant reported the accounts to the credit bureaus separately and contacted Plaintiff on separate occasions in attempts to collect two separate debts; but then Defendant attempts to cry claim-splitting in order to oppose the newest lawsuit highlighting its FDCPA violations as they relate to a separate debt and thus separate debt collection efforts. Defendant cannot have it both ways. Defendant's clients cannot represent themselves as two creditors to collect two alleged debts, but later allow Defendant to present them as being under one parent company when convenient during litigation. Furthermore, the previous action was not still pending when Plaintiff filed the instant compliant. The initial case (about a separate and unrelated transaction) was settled, meaning there was no judgment entered, thus making claim-splitting an impossibility, and Defendant's claim that Plaintiff is attempting to circumvent the statutory maximum recovery is unfounded.

Defendant erroneously relies on *Calvert v. Alessi & Koenig, LLC*, where the plaintiff's claims arose from a debt collection agency's handling of past due Home Owners' Associations assessment originating from the same nucleus of facts. No. 2:11-CV-00333-LRH, 2013 WL 592906, at *1 (D. Nev. Feb. 12, 2013). Calvert initiated four different law suits based on four collection letters attempting to collect the *same debt*. *Id.* (emphasis added). Defendant also relied on *Beeders v. Gulf Coast Collection Bureau,* where plaintiff filed a separate suit for each of the ten phone calls he received pertaining to a single debt. 632 F. Supp. 2d 1125, 1126-27 (M.D. Fla. June 30, 2009). Conversely, in the instant case, Plaintiff's settled claim in *Horia I* arose from an account originally with Loyola University Health System, while his current claim arises from an account with Gottlieb Memorial Hospital—a debt that is completely separate from the debt in the previous claim, and based on a separate FDCPA violation.

The purpose of the FDCPA is to protect consumers from *all* unfair debt collection practices. The fact that both of Plaintiff's separate, unrelated debts happened to be placed with the same company for collection should not prevent Plaintiff from bringing individual suits to enforce liability for each of the separate FDCPA violations that occurred here. The transactions underlying the debts are entirely distinct, and surely there would be no claim-splitting argument from Defendant if the instant debt had simply been placed with a different company for collection, but with all other facts remaining the same (i.e. same dispute letter sent to both collectors on the same day, and consumer checked the same credit report for both debts at the same time).

**II.     Plaintiff's Counsel Advocates for Unsophisticated Consumers Preyed Upon by Defendant and Similarly Situated Debt Collectors.**

Defendant rehashes cases that are factually dissimilar to the instant case to attempt to argue that multiple violations of the FDCPA should be litigated once because the *same debt collector* acted in violation of the statute each time. In both *Rockafellow v. Grant & Weber, Inc.* and *Cooper*

7

*v. Retrieval-Masters Creditors Bureau, Inc.,* the respective underlying debts were the same as the previously settled and adjudicated cases, respectively. No. 14-cv-09293 (N.D. Ill.); 2017 U.S. Dist. LEXIS 166984 (N.D. Ill. Oct. 10, 2017). Defendant refers this Court to a handful of other cases (involving Plaintiff's counsel here) and opines that Plaintiff's counsel have engaged in rampant claim-splitting. (See Dkt. #14, pp. 11-12). Those cases involved a single plaintiff, who filed two separate lawsuits against one debt collector, Midland Funding, LLC, and three separate lawsuits against another debt collector, Portfolio Recovery Associates, LLC. The issue of claim-splitting, however, was not brought up in any of those cases, likely because the defendants realized that, while the same plaintiff was bringing suit against the same debt collector, each suit was for an entirely separate different debt and the violations that a debt collector commits in the process of the collection of one debt cannot be said to be the same, or arise from the same nucleus of operative facts, as the violations it commits in the process of the collection of a separate debt, even though it is the same collector attempting to collect a debt from the same consumer.

     Again, here the instant claim involves a completely separate claim from a different account (Gottlieb Memorial Hospital) than the claim Plaintiff previously settled in *Horia I* (Loyola University Health System). Furthermore, an FDCPA claim against a collection agency [is] not barred by res judicata after the consumer settled the claim on the underlying debt with the creditor. To permit the bar would frustrate the purposes of the FDCPA. *Gasser v. Allen County Claims & Adjustment, Inc.*, 1983 U.S. Dist. LEXIS 20361 (N.D. Ohio Nov. 3, 1983). The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors. 15 U.S.C. §1692(e). Rather than an attempt to collect attorney's fees, as Defendant alleges, this case is an attempt to protect Plaintiff from yet another FDCPA violation by Defendant.

**III.**    **Defendant's Motion to Dismiss Should Be Denied in the Interest of Justice.**

Defendant claims that this Court should dismiss this lawsuit because it could have and should have been brought in *Horia I.* (Dkt. #14, p. 14). Defendant's goal here is simply to mitigate its damages while depriving Plaintiff from rightfully pursuing each of his claims under the FDCPA. Plaintiff is aware of no law which states that separate claims arising from separate debts must be brought in the same action simply because they involve the same parties and the same *kind* of claim (i.e. failure to report a debt as disputed to the credit bureaus). The result Defendant advocates for would undoubtedly result in many consumers being disadvantaged and barred from bringing subsequent suits just because the same debt collector is attempting to collect from the same consumer one separate debt after another. Such a result would ultimately render the FDCPA meaningless, for it would provide debt collectors with an unlimited "free pass" to violate the FDCPA as many times as they want without consequence if they are attempting to collect multiple, unrelated debts from the same consumer within a given timeframe. Here, the interests of justice rather require that Plaintiff be permitted to pursue this new and independent claim because the alleged FDCPA violation is based on a separate and unrelated debt and there is nothing which requires a plaintiff to bring multiple claims against the same defendant in a single proceeding where each of those claims is based on a separate and distinct underlying transaction.

### IV. Plaintiff Properly Alleges Damages Recoverable Under 225 ILCS 425/9 of the Illinois Collection Agency Act.

Defendant Nationwide claims that Plaintiff has no private right of action under the ICAA, however, as the court noted in *Eul v. Transworld Systems*, the Northern District is split on this particular issue. Recent cases in this District seem to support the notion that the ICAA does imply a private right of action under § 9. 2017 WL 1178537 (N.D. Ill. Mar. 30, 2017). *See e.g. McLaughlin v. LVNV Funding, LLC*, 971 F.Supp.2d 796, 800 (N.D. Ill. 2013); *Trull v. GC Servs. Ltd. P'Ship*, 961 F.Supp 1199, 1206 (N.D. Ill. 1999); *Kim v. Riscuity, Inc.*, 2006 WL 2192121 at

9

\*3 (N.D. Ill. Jul. 31, 2006); *Galvan v. NCO Fin. Systems, Inc.*, 2016 WL 792009, \*3-4 (N.D. Ill. Mar. 1, 2016) (collecting cases holding that ICAA provides private right of action and "the [c]ourt is willing to assume that *Sherman* remains good law and *Trice 2* does not clearly evince the Illinois Supreme Court's interest in overturning it."). *But see Skinner v. LVNV Funding, LLC*, No. 16-cv-07089, Doc. #55, pp. 9-13 (N.D. Ill. Jan. 8, 2018) (collecting cases and finding that "Illinois Supreme Court would not find an implied right of action under § 9 of the ICAA.").

In fact, in *Grant-Hall*, Judge Feinerman explicitly rejected the contention that private rights of action do not exist under *§* 9 of the ICAA. *Grant-Hall v. Cavalry Portfolio Servs., LLC*, 856 F.Supp.2d 929, 940 (N.D. Ill. 2012). This ruling was based on the Illinois Supreme Court's favorable citing to *Sherman*, where the Illinois Appellate Court found that a private right of action exists under Section 9. *Grant-Hall*, 856 F. Supp. 2d at 940.; *see also Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill.2d 379, 59 Ill.Dec. 905, 432 N.E.2d 849, 852-53 (1982) (court found that a private right of action may be implied to achieve the aim and purpose of legislation where no express right exists); *see also Sherman v. Field Clinic*, 74 Ill.App.3d 21, 29 Ill.Dec. 597, 392 N.E.2d 154 (1979). Also, as *Eul* points out, the Illinois Supreme Court still has not decided on the question of whether a private right of action exists under § 9 of the ICAA. *Eul*, 2017 WL 1178537 at \*16. Therefore, this Court should defer to the Illinois Supreme Court's prior citation to *Sherman* and the District's prior rulings in *McLaughlin*, *Trull*, *Kim*, & *Grant-Hall* and find that Plaintiff is entitled to a private right of action under the ICAA.

The ICAA also requires a plaintiff to show actual damages as a result of the defendant's conduct. Plaintiff's Complaint alleges he experienced annoyance, aggravation, and other negative emotions as a result of Defendant's failure to disclose to the credit bureau the fact that Plaintiff disputed the alleged debt when it also communicated other information about the alleged debt.

(Complaint, Dkt. #1, ¶¶ 28-31). Plaintiff's allegation is therefore adequate. *Thomas v. Arrow Fin. Servs., LLC*, 2006 WL 2438346, *4 (N.D. Ill. Aug. 17, 2006) (citing *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736 , 736 (N.D. Ill. July 8, 2003)). In *Thomas*, plaintiff claimed her actual damages were the humiliation and embarrassment resulting from her employer's receipt of a fax sent from defendant debt collector. *Id.* at *5. The court held that to be a compensable injury. *Id.* (citing *Greisz v. Household Bank (Illinois)*, 8 F. Supp. 2d 1031, 1043 (N.D. Ill. Mar. 25, 1998) ("it is well established in Illinois that "actual damages include compensation for mental suffering.") (internal quotes omitted)). Similarly, in *Kim v. Riscuity, Inc.*, 2006 WL 2192121 (N.D. Ill. July 21, 2006), plaintiff alleged defendant violated the ICAA, and suffered damage to his credit score as a result. The court found this to be a sufficient allegation of actual damages and held that plaintiff was not required to plead specifically *how* his credit score had been damaged. *Id.* at *3 (emphasis added).

Construing the facts and inferences in the light most favorable to Plaintiff, as courts must do at this stage, this Court should conclude that Plaintiff has stated a claim under the ICAA and has also sufficiently alleged actual damages as required under the ICAA. Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss.

## CONCLUSION

For the reasons stated, Defendant's motion to dismiss should be denied and for any other relief deemed necessary by this Court. In the alternative, Plaintiff respectfully requests an opportunity to amend his Complaint accordingly.

Respectfully Submitted,

By: s/*Celetha Chatman*
One of Plaintiff's Attorneys

11

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
73 W. Monroe Street, Suite 514
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
mwood@communitylawyersgroup.com
celethachatman@communitylawyersgroup.com

## **CERTIFICATE OF SERVICE**

I, Celetha C. Chatman, an attorney, hereby certify that on February 20, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: February 20, 2018**                                                                                  Respectfully submitted,

                                                                                                By:    /s/ *Celetha C. Chatman*