**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HENRY HORIA, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | Case No. 17-cv-08355 |
| v. ) | |
| ) | Hon. Andrea R. Wood |
| NATIONWIDE CREDIT AND ) | |
| COLLECTION, INC., ) | Magistrate Judge Daniel G. Martin |
| ) | |
| DEFENDANT. ) | |

**PLAINTIFF'S MOTION TO ALTER OR AMEND A JUDGMENT**

Plaintiff Henry Horia, by and through his undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 59(e), moves to alter or amend the July 31, 2018, Memorandum Opinion and Order (Dkt. #32) granting Defendant's motion to dismiss. Plaintiff respectfully asks that the Order be altered or amended to deny Defendant's motion to dismiss, and for any other relief this Court deems just and proper.

**Introduction**

This case and *Horia I* involved different debts, owed to different creditors. Defendant's attempts to collect those debts are thus "separate transactions" for *res judicata* purposes. This Court, however, was concerned that the alleged FDCPA violations were so similar that they were not separate transactions, and that *res judicata* applied. In so ruling, the Court misapplied controlling Seventh Circuit precedent. The Seventh Circuit has expressly stated that "whether the evidence concerning [the two claims] is similar" is not the appropriate criteria for determining whether the claims arise from the same transaction. *Hermann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993). Instead, the focus must be on the facts that comprise the claims themselves. *Id.*

1

There is no question that the facts here are not the same as those in *Horia I*—they are only similar. The debts themselves were unquestionably different transactions—they were owed to two different hospitals. As such, evidence for whether the debt qualifies as a "debt" under the FDCPA is different. The communication containing the consumer's dispute is different. The communication by Defendant to Experian that omitted the dispute will be different. Indeed, other than the parties, every single fact comprising the FDCPA violation in this case is different from the facts at issue in *Horia I*. Their mere *similarity* does not make them the same. And under established Seventh Circuit precedent, their similarity cannot be the basis for barring this case on *res judicata* grounds.

Flipping the circumstances makes this concept clear. If Defendant sued Plaintiff and obtained a judgment for the *Horia I* debt, then subsequently sued Plaintiff again for the debt at issue here, no court would bar the second action based on *res judicata*—because the debts are different. The same must also be true for FDCPA violations arise in the collection of such debts.

## Background

Plaintiff previously sued Defendant for alleged FDCPA violations in connection with Defendant's attempts to collect a debt allegedly owed to Loyola University Health System (the "Loyola Debt"). *See Horia v. Nationwide Credit & Collection, Inc.*, Case No. 17-cv-6103 (N.D. Ill.) ("*Horia I*"), at [Docket No. 1]. The parties settled that case and it was dismissed with prejudice.

Plaintiff filed his complaint in this case, alleging FDCPA violations for similar misconduct, but in connection with Defendant's attempts to collect a debt allegedly owed to Gottlieb Memorial Hospital (the "Gottlieb Debt"). [Docket No. 1], at Ex. A.

On January 12, 2017, Defendant filed a motion to dismiss, claiming this action was barred by *res judicata* due to the resolution of *Horia I*. [Docket No. 13]. On February 20, 2018, Plaintiff filed his response, arguing that the Loyola Debt and the Gottlieb Debt were different, and therefore that *res judicata* therefore did not apply. [Docket No. 22]. On March 7, 2018, Defendant filed its reply. [Docket No. 23]. On July 31, 2018, the Court granted Defendant's motion to dismiss and entered judgment against Plaintiff. (Dkt. #32 and #33).

## Legal Standard

A Rule 59(e) Motion to Alter or Amend a Judgment is appropriate to correct manifest errors of law or fact. *See, Sigsworth v. City of Aurora, Ill.,* 487 F.3d 506, 512 (7th Cir. 2007); *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir.1995). A manifest error of law is the "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). Additionally, a motion for reconsideration is proper where "the Court has patently misunderstood a party … or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990). The motion also performs a valuable function and is premised on the principal of judicial economy, as it allows the court to "correct its own errors and thus avoid unnecessary appellate procedure." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir.1996). Plaintiff respectfully submits that the Court misapplied the law on *res judicata* and misapprehended facts in support of his § 1692e(8) claim, and requests that the Court reconsider the Order granting Defendant's motion to dismiss.

## Argument

**I.  No identity of claims exists between *Horia I* and this case because in *Horia I* Defendant attempted to collect a different debt owed to a different creditor, and attempting to collect separate debts qualifies as a separate transaction for *res judicata* purposes**

      **A.**      **The Court misapplied Seventh Circuit precedent on the "same transaction" test by focusing on the similarity of the claims and evidence in this case and in *Horia I*, and not on the different facts that comprise Plaintiff's claims in each case**

      The Court misapplied the law on *res judicata* by focusing on how similar the claims in *Horia I* are to the claims in this case, but ignoring that they are based on different operative facts. Similar misconduct in an attempt to collect two distinct debts, regardless of how striking the similarity may be, does make the collection of those two debts the "same transaction." The debts themselves arose from separate transactions. They are different obligations, owed to different creditors, arising from different circumstances. As such, misconduct in connection with an attempt to collect these different debts is not and cannot be the "same transaction" for *res judicata* purposes.

      "[T]he test of an identity of the causes of action is whether the claims arise out of the same set of operative facts or the same transaction. Even if the two claims are based on different legal theories, the two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations." *Bernstein v. Banklert*, 733 F.3d 190, 226-27 (7th Cir. 2013) (citations omitted). *Res judicata* therefore "require[s] the joinder of all legal challenges to a wrong, and all claims for relief arising out of those events . . . . *Ross v. Bd. of Educ.*, 486 F.3d 279, 283 (7th Cir. 2007) (quoting *Perkins v. Bd. of Trustees*, 116 F.3d 235, 236-37 (7th Cir, 1997). But *res judicata* is limited to multiple suits on a single "wrong." It will not preclude multiple suits if there are multiple, distinct "wrongs" to be redressed. The Seventh Circuit has explained that *res judicata* does not "compel[] the joinder of claims arising from separate wrongs." *Id.* (citing *Hermann v. Cencom Cable Assoc., Inc.*, 999 F.2d 223, 226 (7th Cir. 1993).

      The Seventh Circuit has rejected a "pragmatic" approach to determining whether two claims constitute the same transaction, and specifically rejected the notion that "whether the

4

evidence concerning [the two claims] is similar" is an appropriate criterion. *Hermann*, 999 F.2d at 226. In rejecting this approach, the Seventh Circuit explained that "[l]itigants and their lawyers are entitled to clearer guidance in an area where a false step can result in the forfeiture of valuable legal rights than generalities about practicality, convenience, similarities, and expectations can furnish." *Id.*

In this case, the Court adopted the same reasoning that the Seventh Circuit expressly rejected in *Hermann*. The Court used the similarity of the facts and legal theories in this case and in *Horia I* to determine that the claims arose from the same transaction. But the facts themselves are actually quite distinct, notwithstanding their similarity. The Loyola Debt in *Horia I* is different that the Gottlieb Debt at issue here. Two different debts mean two different sets of facts will be at play. The facts regarding whether the Gottlieb Debt qualifies as a "debt" under the FDCPA are different from those for the Loyola Debt. Plaintiff's dispute of the Gottlieb Debt arose from a different communication to Defendant than the communication for the Loyola Debt. Defendant's reporting to Experian for the Gottlieb Debt was a different tradeline than for the Loyola Debt, meaning that they arose from distinct communications.

Even if the facts surrounding Defendant's attempts to collect Gottlieb Debt and the Loyola Debt occurred at the same time, even if certain letters contain substantially the same language, their similarity does not make them the same facts. Like fraternal twins, their evident *similarity* does not mean they are the *same*.

### B. Defendant could have filed consecutive collection actions for each debt and the second action would not have been barred; the same must also be true for consecutive actions for Defendant's misconduct in collecting each debt

The factual distinction becomes even more clear if the Court considers Defendant suing Plaintiff to collect the Gottlieb Debt and the Loyola Debt. It seems obvious that if Defendant sued Plaintiff to collect Loyola Debt, a final judgment in the collection action would not preclude

5

Defendant from suing Plaintiff to collect Gottlieb Debt. Indeed, Magistrate Judge Schenkier ruled on that precise issue in *U.S. v. Romero*, Case No. 15 C 5607, U.S. Dist. LEXIS 1627 (N.D. Ill. Jan. 5, 2017). In that case, the U.S. filed a student loan collection action against Romero in 2014 regarding three student loan debts, which was resolved in June 2015. *Id.* at *19-20. Then in June 2015, the U.S. filed another student loan collection action against Romero for another two debts. *Id.* at *1. Romero claimed that the second action was barred by *res judicata*. *Id.* The court disagreed, and explained that "[a]lthough the legal theory is the same, the prior case was based on different loans than those now at issue. These were separate occurrences or transactions from the two loans upon which the government now seeks recovery for default. Therefore, *res judicata* does not apply to bar the government's claims." *Id.* at *19.

Going even further, Illinois courts have concluded that a final judgment on a debt will not preclude a subsequent lawsuit on a guaranty contract for that same debt. In *LP XXVI, LLV v. Goldstein*, the Appellate Court of Illinois explained that even though "the note, mortgage, and guaranty were all executed concurrently . . . . their near proximity in time" does not warrant the application of *res judicata*. 811 N.E.2d 286, 289 (App. Ct. Ill. 2004). Though this is merely persuasive authority, it is worth noting that Illinois courts apply the same test when determining identity of claims for *res judicata*. *See River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883 (Ill. Sup. Ct. 1998) ("[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts . . . .").

Moreover, the point here is that Defendant could have brought separate actions for the Loyola Debt at issue in *Horia I* and the Gottlien Debt at issue in this case—whether under federal law or as collection actions in Illinois. The same must also hold true for actions premised on alleged misconduct in Defendant's attempts to collect those same debts.

    **C.    The only cases touching on this issue have either directly held or tacitly assumed that FDCPA claims premised on different debts qualify as separate claims**

Case law directly on point is sparse. Counsel's research revealed only one case that ruled on this precise issue: whether *res judicata* applies to FDCPA claims premised on separate debts. In that case, *Read v. Amana Collection Servs.*, the District Court for the Western District of New York ruled precisely the opposite of this Court, and stated as follows:

> The defendant contends that this matter was resolved in a previous case between these parties . . . the Court having ruled in such case that defendant's notice confirmed to the requirements of the FDCPA. As counsel for the defendant conceded at oral argument, however, the prior case has no *res judicata* effect on the instant one because the earlier case involved a different communication about a different debt.

Case No. CIV-90-110E, 1991 U.S. Dist. LEXIS 21773, at n. 2 (W.D.N.Y. Jan. 15, 1991). This case too involves a different communication about a different debt than the debt in *Horia I*. Even though the alleged misconduct violated the FDPCA in the same way, and even though the misconduct and the circumstances leading up to the misconduct occurred at or near the same time and to the same person (Experian), they were nevertheless different communications. The result should therefore be the same as in *Read*.

The Southern Indiana District Court made a similar observation in *Karr v. Med-1 Solutions, LLC*, . Case No. 1:12-cv-01182, 2014 U.S. Dist. LEXIS 151445 (S.D. Ind. Oct. 22, 2014). There, the court reviewed a fee petition in a case where a plaintiff brought a two-count FDCPA claim against one debt collector, with each count related to a different debt. *Id.* at *1. In its review, the court stated that the plaintiff "brought two separate FDCPA claims based upon two distinct debts." *Id.* at *10. Although the court's statement was merely dicta, it is still telling: the court understood that different debts give rise to different claims, even if there are other similarities.

By contrast, research has revealed zero cases holding that FDCPA claims arising from the collection of different debts qualify as the "same transaction."

## II. The Court's decision misapprehends the purpose of the FDCPA damages cap, and empowers debt collectors to engaged in widespread violations on multiple debts against a single debtor, so long as such violations are sufficiently similar

The Court's application of *res judicata*, if left alone, will empower debt collectors to violate the FDPCA at volume, so long as the violations are sufficiently similar. As the Court is undoubtedly aware, many debt collectors attempt to collect multiple different debts from a single consumer. Under the Court's ruling, a debt collector will be empowered to violate the FDCPA for all of those debts but face only one claim, so long as the violations are sufficiently similar in nature and timing. This was not intention of the FDCPA's damages cap.

Indeed, when this concept is scaled up, its impropriety becomes apparent. For example, a debt collector could send a single consumer 100 dunning letters, each for a different debt, and overstate the amount for each debt. Under this Court's ruling, the maximum statutory damages that the violating debt collector would face for its large-scale violations would be only $1,000. Consider the cost/benefit analysis performed by a debt collector in this scenario. If the 100 debts were each overstated by $500, the debt collector would face potential statutory liability of only $1,000 for attempting to fraudulently collect $50,000 from a single consumer across 100 different debts. The FDCPA would be rendered completely ineffectual, as the potential benefits to the debt collector for widespread violations would far outweigh the risks.

The FDCPA's damages cap was not intended to insulate a debt collector from statutory damages when it violates across different debts. Instead, it was intended to prevent a consumer from double-dipping on many different violations for a single debt. For example, if a consumer receives a dunning letter with an overstated amount, gets sued for the overstated amount on the same debt, and receives threatening phone calls late at night for the same debt, the consumer

8

would have only one FDCPA claim. Even though multiple different violations occurred, the singular nature of the debt limits the consumer's claims.

If, however, that same debt collector engaged in those same three acts for three different debts, the consumer would have three different claims. This distinction makes sense: the debt collector stands to make more money if there are more debts, and the consumer faces greater potential for financial harm. Additional disincentives are necessary to curb the misconduct. But for a single debt, the appropriate disincentive is already there with the single claim because the debt collector's upside gain for the FDPCA violations is limited to the single debt.

This Court's ruling blurs these lines. Now a debt collector can face limited damages for misconduct on multiple debts, so long as the misconduct looks sufficiently similar. This was not the intention behind the FDCPA's damages cap, and the Court should change its ruling accordingly.

### III. Conclusion

Because the Court misapprehended the factual distinctions between this case and *Horia I* and misapplied controlling Seventh Circuit precedent, Plaintiff respectfully request this Court amend or alter its Order of July 31, 2018, dismissing this action.

9

                                          Respectfully Submitted,

                                          By: *Daniel Brown*
                                          One of Plaintiff's Attorneys

Michael Wood
Celetha Chatman
**Community Lawyers Group, Ltd.**
73 W. Monroe, Suite 514
Chicago, IL 60603
Ph: (312) 757-1880
Fx: (312) 265-3227
cchatman@communitylawyersgroup.com

Daniel Brown (ARDC # 6299184)
Main Street Attorney, LLC
PO Box 247
Chicago, IL 60690
Ph: (773) 453-7410
Fx: (773) 453-6420
daniel@mainstreetattorney.com

## CERTIFICATE OF SERVICE

      I, Daniel Brown, an attorney, hereby certify that on August 28, 2018, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all attorneys of record.

**Dated: August 28, 2018**                                                      Respectfully submitted,

                                                                   By: /s/ *Daniel Brown*